IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOYCE LANG,

    Plaintiff,

vs.                                                 No. CIV **03-0760 MCA/LFG**

**SIVAGE-THOMAS HOMES, INC.**,

    Defendant,

**MEMORANDUM OPINION AND ORDER
COMPELLING ARBITRATION AND STAYING PROCEEDINGS**

**THIS MATTER** comes before the Court on *Defendant's Motion to Compel Arbitration and Stay Proceedings* [Doc. No. 8] filed on July 10, 2003. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants Defendant's motion for the reasons set forth below.

**I.**    **BACKGROUND**

On May 23, 2003, Plaintiff Joyce Lang filed a civil action alleging that Defendant Sivage-Thomas Homes, Inc. violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 to 634, and the New Mexico Human Rights Act (NMHRA), N.M. Stat. Ann. §§ 28-1-1 to 28-1-15 (Michie 1978 & Supp. 2003), by terminating her employment as a real-estate salesperson because of her age. Defendant removed the action to this Court on June 27, 2003 [Doc. No. 1], and filed a motion to compel arbitration and stay the proceedings on July 10, 2003 [Doc. No. 8].

As grounds for compelling arbitration and staying the proceedings in this case, Defendant asserts that Plaintiff signed two employment agreements, each of which contains an arbitration clause. The first employment agreement is dated September 19, 2000, and contains the following arbitration clause:

> Employee agrees to submit to binding arbitration any claim or dispute that he or she may have, whether mature or unmatured, whether legal, equitable, statutory, contractual or tortious in nature, arising out of his or her employment or pertaining to any of the matters set forth in this Agreement, together with any such claim or dispute that may arise in the future.
>
> Such arbitration shall be under the rules of American Arbitration Association, and shall be heard by a panel of 1 arbitrator. Such arbitration shall be final and conclusive and the arbitrator's award may be entered as a judgment in any court with jurisdiction to do so.
>
> Despite any future agreement which may be made between Employee and STH which may contain an integration clause, this agreement shall be deemed to be a part thereof whether or not specifically incorporated in any future agreements.

[Ex. A-1 to Deft.'s Mem. at 11-12.] The second employment agreement is dated March 12, 2001, and contains an arbitration clause with the same language quoted above, except the term "Associate" is substituted for the term "Employee." [Ex. A-2 to Deft.'s Mem. at 10-11.]

Plaintiff's signature appears on both employment agreements. Both employment agreements also contain a signature block for the employer's signature; however, the signature line for the employer is left blank and unsigned on both agreements. [Ex. A-1 to Deft.'s Mem. at 13; Ex. A-2 to Deft.'s Mem. at 12.]

In addition to the arbitration clauses and signature blocks mentioned above, the employment agreements at issue in this case contain several other detailed provisions regarding Plaintiff's duties as an employee and her rights with respect to compensation and benefits. The agreements also provide that: "This Agreement shall be governed by the laws of the State of New Mexico." [Ex. A-1 to Deft.'s Mem. at 11; Ex. A-2 to Deft.'s Mem. at 10.] Finally, each agreement states that: "No modification of this Agreement is valid unless it is in writing and signed by the parties." [Ex. A-1 to Deft.'s Mem. at 12; Ex. A-2 to Deft.'s Mem. at 11.]

## II.   ANALYSIS

This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because Plaintiff's *Complaint* asserts a federal question under the ADEA. Neither party has contested personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

The Court's first task is to determine whether the arbitration clauses in the parties' employment agreements evince an agreement to arbitrate this dispute. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U. S. 614, 626 (1985). If this requirement is met, the Court must then determine "whether legal constraints external to the parties' agreement foreclose[ ] the arbitration of those claims." Id. at 628.

As in any contract case, the parties' intent is controlling with regard to whether they agreed to arbitrate a particular dispute, and determining intent is a question of law for the Court.  See Armijo v. Prudential Ins. Co., 72 F. 3d 793, 797 (10th Cir. 1995) (citing Mitsubishi Motors Corp., 473 U. S. at 626). Under federal law, "'any doubts concerning the

scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" Mitsubishi Motors Corp., 473 U.S. at 626 (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)); accord Williams v. Imhoff, 203 F. 3d 758, 764 (10th Cir. 2000). Similarly, the New Mexico Supreme Court has recognized that "there is a strong public-policy preference in favor of resolving disputes through arbitration" in this state. McMillan v. Allstate Indem. Co., 2004-NMSC-002, ¶ 9, 2003 WL 23220014, ___ P.3d ___.

In her response brief [Doc. No. 10], Plaintiff does not point to any ambiguity in the language of the arbitration clauses which would raise a question as to whether they were intended to apply to the type of statutory claims alleged in this case. Rather, Plaintiff asserts that the arbitration clauses are invalid and not enforceable with respect to this action because (1) the employment agreements in which they appear were not signed by Defendant, (2) they lack "evenhandedness," and (3) they do not comply with certain requirements set forth in the Older Workers Benefit Protection Act (OWBPA), 29 U.S.C. § 626(f)(1).

Defendant denies these assertions. According to Defendant, the arbitration clauses are enforceable because the agreements in question are supported by consideration, and neither the OWBPA nor the absence of Defendant's signature on the agreements presents a bar to arbitration under these circumstances.

### A.     <u>The Absence of Defendant's Signature on the Agreements</u>

The employment agreements at issue in this case do not expressly state that they must be signed by both parties in order to be valid and enforceable.[1] But the fact that Defendant did not sign the agreements could, in some circumstances, create an ambiguity as to Defendant's intent to enter into a contract. For these reasons, it is necessary to resort to principles of contract interpretation in order to determine the significance of the fact that Defendant's signature is absent from the agreements.

As a general principle of federal law, "'the parties' intentions . . . are generously construed as to issues of arbitrability.'" <u>Williams</u>, 203 F.3d at 764 (quoting <u>Mitsubishi Motors</u>, 473 U.S. at 626). While the Federal Arbitration Act "requires a writing, it does not require that the writing be signed by the parties." <u>Genesco, Inc. v. T. Kakiuchi & Co.</u>, 815 F.2d 840, 846 (2d Cir. 1987) (citing 9 U.S.C. § 3, and <u>Med. Dev. Corp. v. Indus. Molding Corp.</u>, 479 F.2d 345, 348 (10th Cir.1973)).

In this case, the agreements each contain a provision to the effect that they "shall be governed by New Mexico law." [Ex. A-1, A-2 to Deft.'s Mem.] With respect to contracts that require a writing, New Mexico courts appear to follow the general rule that:

---

[1] As noted in Section II.B, <u>infra</u>, the modification clauses in the agreements state in part that: "No modification of this Agreement is valid unless it is in writing and signed by the parties." [Ex. A-1, A-2 to Deft.'s Mem.] Because the second agreement is not signed by both parties, this clause in the first agreement arguably might render the second employment agreement invalid insofar as it is considered a modification of the first agreement. This possibility would not affect the outcome of Defendant's motion, however, because the arbitration clause in the first agreement is essentially the same as the arbitration clause in the second agreement.

> Unless additional requirements are prescribed by the particular statute, a contract within the Statute of Frauds is enforceable if it is evidenced by any writing, *signed by or on behalf of the party to be charged*, which
> (a) reasonably identifies the subject matter of the contract,
> (b) is sufficient to indicate that a contract with respect thereto has been made between the parties *or offered by the signer to the other party*, and
> (c) states with reasonable certainty the essential terms of the unperformed promises in the contract.

Restatement (Second) of Contracts § 131 (1981) (emphasis added). See Long v. Allen, 120 N.M. 763, 765, 906 P.2d 754, 756 (Ct. App. 1995); McCoy v. Alsup, 94 N.M. 255, 261-62, 609 P.2d 337, 343-44 (Ct. App. 1980); cf. Pickett v. Miller, 76 N.M. 105, 108, 412 P.2d 400, 403 (1966) ("Agreements may be completed other than by placing one's signature at the bottom of [a] formal contract. A written offer does not necessarily require the signature of [the] offeree in order to form a complete agreement.").

There is no dispute that Plaintiff, who is "the party to be charged" in this case, signed each employment agreement, and that the agreements were subsequently received by Defendant and kept in its personnel files in the ordinary course of business. [Ex. A to Deft.'s Mem.] To the extent that the absence of Defendant's signature creates any ambiguity, the Court resolves that ambiguity in favor of the arbitrability of Plaintiff's claims in this case by applying the principles of contract interpretation cited above.

### B.     The "Evenhandedness" of the Arbitration Clauses

Plaintiff asserts that the employment agreements at issue here, as well as the arbitration clauses contained therein, evince a lack of "evenhandedness" because they are not signed by both parties and do not expressly impose the same obligations with respect to

arbitration on each party. In particular, Plaintiff points out that the agreements are not signed by Defendant (as noted above) and that the arbitration clauses state that Plaintiff "agrees to submit to binding arbitration any claim or dispute that . . . she may have" while remaining silent as to whether Defendant agrees to submit to binding arbitration any claim or dispute it may have.

To support her claim that the lack of evenhandedness renders the arbitration clauses unenforceable, Plaintiff cites Hooters of Am. v. Phillips, 173 F.3d 933 (4th Cir. 1993). In that case, the Fourth Circuit invalidated an arbitration provision which required the employee to arbitrate her claims under a unique set of arbitration rules devised by the employer that were so one-sided as to "undermine the neutrality of the proceeding." Id. at 938. The Fourth Circuit expressly noted testimony that the employer's rules in that case were not in accordance with the minimum due process standards of the American Arbitration Association. Id. at 939.

The Fourth Circuit's holding in Phillips was cited with approval by the Tenth Circuit. See Dumais v. Am. Golf Corp., Inc., 299 F.3d 1216, 1219 (10th Cir. 2002). Dumais, in turn, was recently cited with approval by the New Mexico Court of Appeals. See Heye v. Am. Golf Corp., Inc., 2003-NMCA-138, ¶¶ 11-15, ___ N.M. ___, 80 P.3d 495. Both Heye and Dumais involved an arbitration provision in an employee handbook that was illusory, and therefore unenforceable, because the employer retained the unilateral right to change almost every provision in the handbook (including the arbitration provision) at any time.

The arbitration clauses at issue in this case are distinguishable from those at issue in Phillips, Dumais, and Heye. In contrast to the unique arbitration rules at issue in Phillips, the arbitration clauses in the case at bar specifically state that the arbitration of Plaintiff's claims "shall be under the rules of [the] American Arbitration Association." [Ex. A-1, A-2 to Deft.'s Mem.] Plaintiff cites no authority to support the proposition that the rules of the American Arbitration Association are so one-sided as to undermine the neutrality of the proceeding or violate minimum standards of due process.

The employment agreements in the case at bar also are distinguishable from the employee handbooks at issue in Dumais and Heye. Immediately after the arbitration clauses, the agreements at issue here contain a section entitled "Modificiation," which states, in relevant part, that: "No modification of this Agreement is valid unless it is in writing and signed by the parties." [Ex. A-1, A-2 to Deft.'s Mem.] Thus, the employment agreements in this case do not provide Defendant with the type of unilateral right to modification that rendered the arbitration provisions illusory and unenforceable in Dumais and Heye.

Rather, Plaintiff's claim of a lack of "evenhandedness" is limited to the fact that the arbitration clauses expressly state that the employee agrees to submit to binding arbitration of any claim or dispute she may have, while remaining silent as to whether Defendant also agrees to submit to binding arbitration of any claim or dispute it may have. Other courts that have addressed this precise issue have held that such a lack of reciprocal obligations in an arbitration clause does not necessarily render that clause unenforceable. See Harris v. Green Tree Fin. Corp., 183 F.3d 173, 179-81 (3rd Cir. 1999) (collecting state and federal cases).

-8-

Such clauses may be enforced so long as the agreement as a whole is supported by consideration, which may take the form of promises of compensation for continued employment. See, e.g., Richards v. Allianz Life Ins. Co., 2003-NMCA-001, ¶¶ 19-20, 47-48, 133 N.M. 229, 62 P.3d 320; Hightower v. GMRI, Inc., 272 F.3d 239, 242-42 (4th Cir. 2001).

These requirements are met in this case. The employment agreements contain detailed provisions regarding Plaintiff's right to compensation and benefits. It is not disputed that Plaintiff began or continued her employment with Defendant, and received compensation for doing so, after signing the agreements. Under these circumstances, the type of imbalance in the parties' obligations with respect to the arbitration clauses does not rise to the level of unconscionability. See Monette v. Tinsley, 1999-NMCA-040, ¶¶ 18-20, 126 N.M. 748, 975 P.2d 361. For these reasons, the Court concludes that the arbitration clauses in this case are not rendered unenforceable because of a lack of "evenhandedness."

### C.   The Effect of the OWBPA on the Arbitration Clauses

Plaintiff also asserts that the OWBPA precludes enforcement of the arbitration clauses at issue here. Plaintiff cites no binding precedent from the Tenth Circuit to support this assertion. Instead, she relies on two district-court opinions from other circuits. See Hammaker v. Brown & Brown, Inc., 214 F. Supp. 2d 575 (E.D. Va. 2002); Thiele v. Merrill Lynch, Pierce, Fenner & Smith, 59 F. Supp. 2d 1067 (S.D. Cal. 1999).

The district court's opinion in Hammaker, 214 F. Supp. 2d at 581, cites Thiele, 59 F. Supp. 2d at 1064, for the proposition that the OWBPA may render an arbitration agreement unenforceable. The district court's opinion in Thiele, 59 F. Supp. at 1064, in turn relies on

the reasoning of Duffield v. Robertson Stephens & Co., 144 F.3d 1182, 1190 n. 5 (9th Cir. 1998), which was recently overruled by EEOC v. Luce, Forward, Hamilton & Scripps, 345 F.3d 742 (9th Cir. 2003) (en banc).  In overruling Duffield, a majority of the Ninth Circuit sitting en banc cited with approval the rulings of the First and Third Circuits in Rosenberg v. Merrill Lynch, Pierce Fenner & Smith, Inc., 170 F.3d 1, 13-14 (1st Cir. 1999), and Seus v. John Nuveen & Co., Inc., 146 F.3d 175, 181-82 (3rd Cir. 1998), as well as the Tenth Circuit's ruling in Metz v. Merrill Lynch, Pierce Fenner & Smith, Inc., 39 F.3d 1482, 1487 (10th Cir. 1994).  See Luce, Forward, Hamilton & Scripps, 345 F.3d at 748-49.

In Rosenberg and Seus, the First and Third Circuits respectively decided that age-discrimination claims are still subject to mandatory arbitration even after the enactment of the OWBPA.  See Rosenberg, 170 F.3d at 13-14; Seus, 146 F.3d at 181-82; accord Williams v. Cigna Fin. Advisors, Inc., 56 F.3d 656, 660-61 (5th Cir. 1995).  On a more general level, the Tenth Circuit reasoned in Metz, 39 F.3d at 1487, that Congress closely modeled the ADEA upon Title VII of the Civil Rights Act and that "Title VII claims, like age discrimination claims, are subject to mandatory arbitration."

In light of these authorities, the Court concludes that the holdings in Hammaker and Thiele cited by Plaintiff are contrary to the clear weight of authority in every circuit (including the Ninth Circuit's recent holding in Luce, Forward, Hamilton & Scripps, 345 F.3d at 748-49).  The Court further concludes that the arbitration clauses at issue in this case are not rendered unenforceable by the OWBPA.

### III.     CONCLUSION

For the foregoing reasons, the Court determines that it has jurisdiction and authority to compel arbitration and stay the proceedings as requested in Defendant's motion.

**IT IS, THEREFORE, ORDERED** that *Defendant's Motion to Compel Arbitration and Stay Proceedings* [Doc. No. 8] is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter shall proceed to arbitration in accordance with the arbitration clauses of the employment agreements attached as Exhibits A-1 and A-2 to *Defendant's Memorandum Brief in Support of Motion to Compel Arbitration and Stay Proceedings* [Doc. No. 9.]

**IT IS FURTHER ORDERED** that proceedings in this action are **STAYED** until further notice pending the outcome of the arbitration.

**SO ORDERED** this 26th day of February, 2004, in Albuquerque, New Mexico.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
**M. CHRISTINA ARMIJO**
United States District Judge